# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK M. SHEESLEY CO., ) | |
|             Plaintiff, ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 3:06-198 |
| HES CONSTRUCTORS, INC. (f/k/a H.E. ) | |
| SARGENT, INC.), SARGENT ) | JUDGE KIM R. GIBSON |
| CORPORATION, and FRU-CON ) | |
| CONSTRUCTION CORP., ) | |
|             Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**Gibson, J.**

### SYNOPSIS

This matter comes before the Court on the Motion to Dismiss and Motion to Transfer Venue from Defendants HES Constructors, Inc. (hereinafter "HES"), Fru-Con Construction Corp. (hereinafter "Fru-Con"), and Sargent Corporation (hereinafter "Sargent"),[1] filed pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). Document 13. For the reasons set forth below, this Court will deny Defendants' Motion to Dismiss; pursuant to 28 U.S.C. § 1406(a) this Court will transfer this case, in the interest of justice, to the United States District Court for the Eastern District of Virginia;

---

[1] The contract (hereinafter "the Subcontract"), whose breach Plaintiff alleges, was with H.E. Sargent, Inc. Document 12-2. The President of HES Constructors states that his firm was "formerly known as H.E. Sargent, Inc." Document 2 ¶ 1. Plaintiff alleges that "Sargent Corporation purchased substantially all of the assets of H.E. Sargent [including "the subcontract with Sheesley" and "some or all of the liability" to Sheesley] in July of 2005." Document 1 ¶¶ 6-7. Plaintiff alleges that "H.E. Sargent and Sargent Corporation are wholly owned subsidiaries of Fru-Con." *Id.* ¶ 8; Document 14 p. 2. Defendant claims that Fru-Com is not a party to the Subcontract in question. Document 12-3 ¶ 5. However, the Subcontract was signed by Mr. Cippolone, whose title is "Operations Manager, Fru-Con Construction Corporation, Eastern Regional Office." *Id.* ¶ 1; Document 12-2 p.23. In addition, the legend above Mr. Cipollone's signature on the Subcontract reads: "Fru-Con Construction Corporation, Parent Company of H.E. Sargent, Inc." Document 15 ¶ 8.

1

and this Court will deny as moot Defendants' motion to transfer venue under 28 U.S.C. 1404(a).

## FACTUAL BACKGROUND[2]

On November 8, 2002, HES, a Maine corporation with its principal place of business in Bangor, Maine, entered into a contract with Goochland County, Virginia, and became the general contractor on the Goochland County Pump Station Project (hereinafter "the Project"), which involved the construction of a new pumping station located in Goochland County and connected to a pressurized sewer main line. The Project was located approximately 30 miles west of Richmond, Virginia. On January 31, 2003, HES entered into the Subcontract with Plaintiff Frank M. Sheesley Co. (hereinafter "Sheesley"), a Pennsylvania corporation with its principal place of business in Johnstown, Pennsylvania, which obligated Sheesley to perform certain concrete work for the Project.

After receiving an invitation from Mr. Cipollone to bid on the Project in December of 2002, Plaintiff prepared its bid proposal in Johnstown, Pennsylvania and, indeed, "[a]ll of Sheesley's estimates, bid proposals [including a revised bid proposal] and the work performed preparing the same was undertaken and completed" in Johnstown. Document 15 ¶¶ 9-10,12; Document 14 p.3. There is, however, no evidence that any representatives of Defendant ever visited Pennsylvania during this process and, in fact, Defendant states that in-person negotiations with Sheesley regarding the contract took place in Virginia. Document 20-3 ¶ 8; Document 20-4 ¶ 6.

Sheesley "received and executed" the Subcontract in Johnstown, signing it on April 1, 2003.

---

[2] For purposes of Defendants' motion, the Court must assume the truth of Sheesley's allegations. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368, 371 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Thus, unless otherwise indicated, the facts are taken from the Complaint and any consistencies between the Parties' filings. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the Parties.

2

Document 14 at 3; Document 15 ¶14. Mr. Cipollone signed the Subcontract "as amended" on April 24, 2003. Document 12-2 p. 23. The Subcontract contains a choice-of-law clause that makes Virginia's the governing law, but does not obligate the parties to bring their disputes in any particular forum or venue. *Id.* ¶17. Sheesley then undertook in Pennsylvania "[a]ll planning, design and preparation," as well as "the majority of purchasing materials" necessary for its performance under the Subcontract in Virginia. *Id.* ¶16.

Sheesley now claims that, notwithstanding its satisfactory, workmanlike, and timely performance of all obligations under the Subcontract, as well as additional work beyond the scope of the Subcontract, its demands for payment went unanswered. Document 1, ¶¶ 16-17. Accordingly, on February 3, 2005, Sheesley exercised its rights under the Subcontract and suspended its work on the Project due to nonpayment. *Id.* at ¶ 18. Thereafter, on February 21, 2005, Defendants terminated the Subcontract. *Id.* at ¶ 19. Accordingly, Sheesley filed the Complaint in this matter on September 7, 2006, alleging breach of contract and violation of Virginia's Public Procurement Act, Va. Code Ann. § 2.2-4300, *et seq.*, against HES, Sargent, and Fru-Con. *Id.* at ¶¶ 21-30. For their part, Defendants claim that Sheesley's work on the Project was deficient and required correction; that Plaintiff improperly refused to complete its work on the Project; and that Sheesley was paid all money to which it was entitled. Document 12, p. 2.

Defendants filed the motion *sub judice* on December 15, 2006, arguing first that because venue in the Western District of Pennsylvania is improper pursuant to 28 U.S.C. § 1391(a), dismissal of the action is warranted under Fed R. Civ. P. 12(b)(3). *Id.* at 3-4. Defendants claim that this objection shifts to Plaintiff the burden of demonstrating that venue is proper. *Id.* Defendants claim in the alternative

that the Eastern District of Virginia is the more appropriate venue and request a discretionary transfer under 28 U.S.C. § 1404(a). *Id.* at 4. For the reasons that follow, the Court will deny Defendants' motion to dismiss; transfer this case in the interest of justice to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a); and deny as moot Defendants' motion to transfer this case pursuant to 28 U.S.C. 1404(a).

## STANDARD OF REVIEW AND BURDEN OF PROOF

When considering a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b), the Court "'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).[3] The parties may, however, "submit affidavits in support of their positions." *Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005) (citations omitted). Notwithstanding Defendants' assertion to the contrary, it is well-settled law within the Third Circuit that the moving party bears the burden of proving that venue is improper. *See, e.g., Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005); *Heft*, 355 F. Supp. 2d at 762 n.4.

## DISCUSSION

This Court has subject matter over the instant action due solely to diversity of citizenship. In

---

[3] It should be noted that both of the cited cases concern motions to dismiss for lack of personal jurisdiction. *Pinker*, 292 F.3d at 368; *Carteret*, 954 F.2d at 142 n.1; *see also* Fed. R. Civ. P. 12(b)(2). This standard has gained some currency within this Circuit in the review of 12(b)(3) motions. *See Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005); *Fellner v. Philadelphia Toboggan Coaster, Inc.*, No. Civ.A. 05-1052, 2005 WL 2660351, at *1, 2005 U.S. Dist. LEXIS 23839, at *4 (E.D. Pa. Oct. 18, 2005). However, the Court of Appeals for the Third Circuit has never expressly addressed this issue.

such cases, "except as otherwise provided by law," venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

No other statute applies to this case, so venue is wholly dependent upon the workings of § 1391(a). There is no claim that any, let alone all of the Defendants are residents of the Western District of Pennsylvania and, indeed, their residency in Pennsylvania would destroy diversity. Section 1391(a)(1) is therefore inapplicable. On the other hand, this case could have been brought in the Eastern District of Virginia. Goochland County is located within the Eastern District of Virginia. United States District Court, Eastern District of Virginia http://www.vaed.uscourts.gov/images/VAFederalCourtsMap.jpg. (last visited 09/12/07). Complete diversity existed, and Defendants have conceded that all Defendants "do business in Virginia and are subject to personal jurisdiction there." Document 12 p.7; *see also* Va. Code Ann. §§ 8.01-328, 328.1; *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (holding that "Virginia's long arm statute extends personal jurisdiction to the limits allowed by due process"). Since this action could have been brought in another district, § 1391(a)(3) is inapplicable as well. Venue in this district can therefore only be established by operation of § 1391(a)(2), making it necessary to for this Court to determine whether "a substantial part of the events or omissions giving rise" to Sheesley's claim occurred in the Western District of Pennsylvania.

The current iteration of the federal general venue statute, 18 U.S.C. § 1391, is an attempt to

5

Case 3:07-cv-00601-RLW Document 24 Filed 09/26/07 Page 6 of 12 PageID# 172

resolve the tension between the competing judicial interests of economy and fairness. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). The previous statute had in almost all cases allowed only one venue, thereby generating substantial amounts of "wasteful litigation" over the question of which venue was best. *Id.* (citing *Report of the Fed. Courts Study Comm.* 94 (Comm. Print 1990)). The present law seeks to limit unnecessary litigation by allowing suit to be brought in multiple fora so long as certain conditions are satisfied. *See Daniel v. Am. Bd. Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)) ; *First Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

Statutorily specified venue is generally designed to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman*, 36 F.3d at 294 (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)) (emphasis in original). Such is the case with §1391. Specifically, the substantiality requirement in §1391(a)(2) is "intended to preserve the element of fairness so that a defendant is not hailed into a remote district having no real relationship to the dispute." *Cottman*, 36 F.3d at 294. The term "substantial" is to be taken "seriously" by the district courts, and the current law is "at most a marginal expansion" of the previous general venue provision. *Daniel*, 428 F.3d at 432 (citations omitted). Indeed, determination of substantiality under the current rule "may at times seem to take on [the] flavor" of the older "best forum" analysis. *Cottman*, 36 F.3d at 294 (citing *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)); *Gulf Ins.*, 417 F.3d at 357 (holding that "submission, approval and issuance" of an insurance policy were sufficient for venue, "at least in combination with" a request for and grant of lifting of a bankruptcy stay, when all the actions took place in the same district); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) (finding

that venue was proper where the relevant events and omissions "predominantly" took place).

In determining whether "events or omissions giving rise to the claim" are substantial, it is first necessary to look to the nature of the dispute. *Cottman,* 36 F.3d at 294. While not all substantial events or omissions are triggering events, events that trigger a dispute are substantial. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) (holding that the sinking of a yacht was significant in an insurance contract dispute triggered by the sinking, even though the sinking had nothing to do with the contract itself); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868, (2d Cir. 1992) (holding that the protections of the Fair Debt Collection Practices Act were triggered by receipt of a collection notice); *Cottman,* 36 F.3d at 295 (holding that a triggering event in a trademark case is the "unauthorized passing off" of the illicitly trademarked item).[4] Once the substantiality of the events or omissions has been established, it is necessary to determine if a substantial part of those events occurred in the forum at issue. *Cottman,* 36 F.3d at 294-95 (citing *Cameron v. Thornburgh,* 983 F.2d 253, 257 (D.C.Cir. 1993); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868,(2d Cir. 1992)); *see also Daniel,* 428 F.3d at 432, (citing *Gulf Ins.*, 417 F.3d at 357) (advocating a "two-part inquiry" wherein the court (1) identifies the "nature of the claims" and the acts or omissions that allegedly engendered them and (2) determines whether a "substantial part of those acts or omissions occurred in the district where suit was filed").[5]

---

[4] Trademark violations are of course federal questions. Section 1391(a) applies to actions "founded only on diversity of citizenship," so in *Cottman* the court applied § 1391(b) instead. *Cottman,* 36 F.3d at 293-94. However, "[s]ection 1391(b)(2) repeats precisely the wording of section 1391(a)(2)." *Id.* at 294; *see also* 18 U.S.C. § 1391(b).

[5] It should be noted that although this approach might suggest that only the actions of the Defendant are to be considered, the Third Circuit has, unlike at least one other circuit, never gone so far, preferring a more "holistic" approach to substantiality analysis. *Uffner,* 244 F.3d at 42 n..6, citations omitted. *Cf. Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.

The action at bar sounds in contract. Substantial factors in contract cases include execution, performance and non-payment. *See Cottman*, 36 F.3d at 295. However, the place the contract was made is not automatically guaranteed to be the location of proper venue. Even a court disposed to the most liberal construction of §1391(a)(2) has been unwilling to decide whether "negotiation and issuance of a contract . . . standing alone, is sufficient to lay venue in that district." *Gulf Ins.*, 417 F.3d at 356, 357 n.2; *see also Consolidated Insurance Co. v. Vanderwoude*, 876 F.Supp. 198 (N.D. Ind. 1995) (holding that while "making the contract . . . was *an* event without which the present suit would not exist, that event [did] not constitute a 'substantial part' of the events giving rise to [the] claim") (emphasis in original).

Plaintiff states that the Subcontract was "executed in Johnstown." Document 14 p.7 (citing Document 14-2 ¶14). In this case, however, mere reference to "execution" is misleading. Plaintiff's own affidavit makes clear that, while Plaintiff "executed" the various iterations of the Subcontract in Johnstown, the Subcontract was then "returned to and executed by Jim Cippollone [sic] on behalf of Fru-Con and HES." Document 14-2 ¶¶ 14-15. There is nothing in the record to indicate that Mr. Cipollone ever left Virginia. In addition, Plaintiff admits that Cipollone signed the contract three weeks after execution by Sheesley's representative. Document 14 pp. 2-3. In a case where signatures occur in two different locations, the "place of the contracting" is where the "last act to bring the agreement

---

1995) (holding that "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff"). Although the Third Circuit is more liberal in its construction than the Eighth, it is difficult to argue with *Woodke*'s assertion that "it is not easy to know how a plaintiff's 'omissions' could ever be relevant to whether a claim has arisen." *Woodke*, 70 F.3d at 985.

8

into legal effect" was performed. *Frankel v. Johns-Manville Corp.*, 257 F.2d 508, 510 (3d Cir. 1958).[6] Explained another way, execution was not complete and the contract was not in effect until Cipollone signed the document and, therefore, the place of contracting was Virginia, not Pennsylvania.

Sheesley's performance of the contract occurred in Virginia. That is also where the dispute over Sheesley's duties, its alleged lack of performance, and HES's alleged interference with Sheesley's performance arose. Document 1 ¶¶ 12-19; Document 14 p. 3. Notwithstanding Plaintiff's allegations, Virginia is also where the non-payment of which Sheesley complains took place. When payment is omitted it is the location of the payor, not the payee, that is the site of the omission. *Cottman*, 36 F.3d at 295. Ultimately, all the triggering events for the current dispute occurred in Virginia.

Plaintiff's reliance on *Superior Precast, Inc. v. Safeco Ins. Co. of America*, 71 F. Supp.2d 438 (E.D. Pa. 1999) is misplaced. Additionally, *Superior Precast* is not binding on this Court and, moreover, is readily distinguishable from the case at hand. Sheesley states that the court in *Superior Precast* found that "negotiations to settle and resolve payment and performance disputes" were substantial. Document 14 at 6; *see also Superior Precast*, 71 F.Supp.2d at 444-45. However, Plaintiff fails to note that in *Superior Precast* the parties actually met for direct negotiations in Superior Precast's plant. *Superior Precast* at 441. In the instant case there is no indication that any Defendant or agent of any of the Defendants ever so much as visited Johnstown. Defendants' filings in fact suggest the contrary conclusion. Document 20-3 ¶¶ 6, 8; Document 20-4 ¶¶ 6-10.

Sheesley further notes that the *Superior Precast* court found that "work spent in preparing and

---

[6]The "last act" in *Frankel* was the mailing of the signed document back to the original signer. *Frankel*, 257 F.2d at 510. In the case *sub judice*, although the papers do not explicitly state that HES returned a signed copy of the contract to Sheesley, it would be unreasonable to assume otherwise.

9

planning for the construction project was also substantial in nature." Document 14 p.6; *see also Superior Precast*, 71 F.Supp.2d at 444. Plaintiff does not mention, though, that Superior went far beyond Sheesley's preparatory activities and had actually fabricated the sound walls for a highway project at its Pennsylvania facility. *Superior Precast* at 444-45. It was this fabrication that the court found to be "obviously a substantial part of the performance" of Superior's contract, in an analysis that "look[ed] to the place of performance of a contract in determining whether venue is proper." *Id.* at 444-45 (citing *J.L. Clarke Mfg. Co. v. Gold Bond Corp.*, 629 F.Supp.788, 791 (E.D. Pa. 1985)).[7]

## CONCLUSION

In conclusion, the Subcontract was entered into in Virginia; Sheesley's performance occurred in Virginia; any interference with Sheesley's performance by Defendants occurred in Virginia; Sheesley's termination of its activities occurred in Virginia; and Defendants' omission of payment of moneys claimed by Sheesley to be due to it under the contract occurred in Virginia. All of the factors that triggered the current dispute occurred in Virginia and, indeed, essentially all of the factors substantially related to Sheesley's claim in contract took place there. The actions that took place in Johnstown, if substantial at all, simply do not comprise a substantial part of the events or omissions that gave rise to the instant claim.

This Court may, in the interest of justice, transfer a case which lacks venue in this district to any

---

[7] Place of performance analysis obviously supports the conclusion that venue is not proper in this district in this case. However, *Clarke* dates from 1985 and was therefore decided under the previous one-forum-only statute. *See Cottman*, 36 F.3d at 294 (discussing the nature of the 1990 amendments to § 1391). Moreover, *Clarke*'s authority for its holding is Moore's Federal Practice, § 0.1425.2 at 1435 (2d Ed. 1985). *Clarke*, 629 F.Supp. at 791. This portion of Moore's does not presently exist. Telephone interview with Barbara Alexander-Klein, Third Circuit Librarian, in Pittsburgh, Pa. (Sept.12, 2007). Consequently, any analysis founded on *Clarke's* holding that place of performance is dispositive of venue should be viewed with caution.

10

other district "in which it could have been brought." 28 U.S.C. § 1406(a). As discussed above, venue is appropriate in the Eastern District of Virginia. As previously noted, Goochland County, the site of the Project, is within that district. Defendants have already conceded personal jurisdiction and Virginia's broad long arm statute will furnish personal jurisdiction in any event. In addition, this Court finds that Plaintiff has acted in good faith and made an honest mistake in initiating this action in the Western District of Pennsylvania, and should therefore not suffer the additional hardship of dismissal.[8]

---

[8] Although the Fourth Circuit applies the statute of limitations for the transferee court and considers the "date of the transfer as the initial filing date for limitations calculations," *Lafferty v. St. Riel*, ___F.3d ___, 2007, No. 05-5357, 2007 WL 2019537, at *2, 2007 U.S. App. LEXIS 16756, at *21-22 (3d Cir. Jul. 19, 2007) (citing *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 526 (4rh Cir. 1987)), Virginia's statute of limitations for an action in contract is five years from date of breach. Va. Code. Ann. §§ 8.01-230, 246(2). As the alleged actions that form the basis for this lawsuit took place in February of 2005, Document 1 ¶¶ 18-19, transfer of this action will not render it time-barred in the Eastern District of Virginia.

11

## ORDER

AND NOW, this 26th day of September, 2007, it is hereby ORDERED that this case is transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a); that Defendants' motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(3) is DENIED; and that Defendants' motion to transfer this case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) is DENIED as moot.

BY THE COURT:

/s/ Kim R. Gibson

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**